UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gail A. Lanoue,<br>    *Plaintiff*,<br><br>    *v.*<br><br>The Prudential Insurance Company of America,<br>    *Defendant*. | Civil No. 3:07cv1756 (JBA)<br><br><br><br>September 25, 2009 |

RULING ON OBJECTIONS TO RECOMMENDED RULING ON MOTIONS FOR SUMMARY JUDGMENT[1]

On March 20, 2009, Magistrate Judge Joan Glazer Margolis issued a Recommended Ruling granting summary judgment to Plaintiff Gail A. Lanoue and denying it to Defendant Prudential Insurance Company of America ("Prudential"). Ms. Lanoue sued Prudential alleging an improper denial of long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The parties cross-moved for summary judgment.

For the reasons below, the Court overrules Defendant's objections to the Recommended Ruling [Doc. # 49], adopts the Recommended Ruling [Doc. # 45], denies summary judgment to Defendant, and grants summary judgment to Plaintiff.

I.   Factual and Procedural Background

The Court presumes familiarity with the Magistrate Judge's Recommended Ruling, in which the factual background is described at length. The following summarizes the relevant

---

[1] This amended ruling supersedes the Court's prior ruling on the parties' motions for judgment [Doc. # 51] to explain the basis for its conclusion that remand to the Plan Administrator is not appropriate in this case.

facts.

Ms. Lanoue was employed at the Mohegan Tribal Gaming Authority as a table games floorperson from October 8, 1997 to February 4, 2006. She was covered under a long-term disability plan (the "Plan") issued and funded by Defendant. Under plan terms, Prudential has "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." In making eligibility determinations, Prudential considers whether a claimant is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury." (Ex. 2, GAL 024.)

On April 11, 2006, Plaintiff applied for long-term disability benefits under the Plan and, shortly thereafter, submitted to Prudential the required Employee Statement and an Attending Physician's Statement ("APS") authored by rheumatologist Dr. Sandeep Varma. On August 1, 2006, Ms. Lanoue submitted to Prudential a Comprehensive Claimant Statement complaining of fibromyalgia, chronic pain, and fatigue. Her initial claim was denied on August 24, 2006. On October 30, 2006, Plaintiff appealed Defendant's benefits denial through Prudential's appeals mechanism. In support of her initial appeal, Ms. Lanoue provided extensive medical records, including an evaluation by Dr. Varma that she was tender at 18 trigger-points associated with fibromyalgia and self-reported pain disability indices, ranging from eight to ten on a one-to-ten scale of pain. (Ex. 113, GAL 291; Ex. 115, GAL 295) To evaluate this appeal, Prudential submitted all of Ms. Lanoue's medical information, including this documentation attached to her original claim, to Dr. Paul Howard, an internist and rheumatologist, for an independent medical review. Dr. Howard concluded that Ms. Lanoue suffered from a chronic pain syndrome of a diffuse nature consistent with fibromyalgia, which

2

"impart[s] no functional impairment." (Ex. 117, GAL 308.)  In response to Prudential's questionnaire, seeking a detailed explanation for his opinion that Ms. Lanoue is not functionally impaired, Dr. Howard stated:

> Ms. Lanoue has no evidence of functional impairment based on the normal physical examination findings in terms of range of motion, peripheral joints, minimal loss of range of motion involving the cervical and lumbar spine, normal neurological examination including normal strength, tone, balance, and gait and station, as provided by her attending rheumatologist. . . . The presence of any trigger point tenderness does not translate into a functional loss in the absence of corresponding findings of functional deficits.  Her complaints of pain are self reported and are not substantiated by any clinical or diagnostic findings from any of her medical providers.

(Ex. 117, GAL 310.)  Based on Dr. Howard's opinion that plaintiff suffered "no functional impairment," Prudential denied the appeal on January 10, 2007.  (Ex. 27, GAL 162.)

Ms. Lanoue appealed through Prudential for a second time in July 6, 2007.  She supplemented this appeal with further medical records of her intense pain and fatigue, including numerous consultation reports from Dr. Varma.  These records included a letter dated July 3, 2007 from Dr. Varma explaining that the debilitating fatigue and pain he identified in Ms. Lanoue were "not addressed by Dr. Howard, yet in my opinion, they are the very things that would interfere with her ability to function in a work environment." (Ex. 130, GAL 334.)  In that letter, Dr. Varma elaborated that he "noted . . . that while she has good range of motion, she exhibited pain on range of motion" and that because of her pain and fatigue, "in Ms. Lanoue's case, I do not believe that she could remain on her feet for the amount of time needed for this job." (*Id.*)  Moreover, he concluded that because of her fatigue and credible reports of "brain fog," it would "be difficult for her to properly supervise the employees for whom she is responsible, and she would have great difficulty dealing with

3

customers appropriately. " (*Id.*)  He further explained that "[t]he fact that her range of motion is relatively unimpaired is of little moment if she is so fatigued or in such pain that she cannot function." (*Id.*)  Dr. Howard reviewed the new medical information and determined that it did not alter his initial evaluation that although Ms. Lanoue may very well suffer from fibromyalgia, it was not disabling.  He concluded that

> [f]ibromyalgia with the presence of tender points does not translate into functional loss in the absence of corresponding findings of functional deficits such as loss of range of motion of any peripheral joints or axial spine, motor weakness, loss of coordination, abnormalities of station and gait, motor atrophy, peripheral neuropathic abnormalities, or other forms of arthritis such as osteoarthritis or inflammatory arthritis.

(Ex. 131, GAL 339)

On August 3, 2007, Prudential denied Ms. Lanoue's second appeal, quoting Dr. Howard's report extensively in its denial letter.  Ms. Lanoue subsequently commenced this action under ERISA.  Upon referral of the motions, Magistrate Judge Margolis concluded that summary judgment should be granted to Plaintiff.  Prudential objects to this recommended disposition in several respects.

II.     Standard

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.2(b) the portions of the Magistrate Judge's decision objected to by Defendant are reviewed de novo, and any part or the entirety of the recommended ruling may be adopted, rejected, or modified.  As noted by Magistrate Judge Margolis, the parties agree that for summary judgment to be granted to Plaintiff, the basis for Defendant's benefits denial must have been arbitrary and capricious.

Under arbitrary and capricious review, an administrator's decision to deny ERISA benefits is overturned "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009) (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995)). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and]...requires more than a scintilla but less than a preponderance." *Smith v. Champion Int'l Corp.*, 573 F. Supp. 2d 599, 615 (D. Conn. 2008) (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)). Courts reviewing plan administrators' benefits denials for arbitrariness and capriciousness are "not free to substitute [their] own judgment for that of the insurer as if [they] were considering the issue of eligibility anew." *Hobson*, 574 F.3d at 83–84 (quoting *Pagan*, 52 F.3d at 442). However, a court reviewing a plan administrator's decision must consider "whether the decision was based on a consideration of relevant factors." *Miller*, 72 F.3d at 1072. In determining whether relevant factors were considered and substantial evidence relied upon in an ERISA eligibility determination, courts are limited to the reasons given "at the time of the denial." *Karanda v. CT Gen'l Life Ins. Co.*, 158 F. Supp. 2d 192, 198, n. 4 (D. Conn. 2000) (citing *Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir. 1984)).

Fibromyalgia is a debilitating syndrome that has few reliable, objective manifestations. Nonetheless, the Second Circuit recognizes that it can be a "disabling impairment" that can render people unable to engage in non-sedentary work. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (holding that in the context of Social Security Disability benefits, "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling

5

impairment, and that there are no objective tests which can conclusively confirm the disease"). Because fibromyalgia does not outwardly manifest itself, it would be "unreasonable to require objective evidence to support a diagnosis of fibromyalgia." *Smith*, 573 F. Supp. 2d at 617–618. Yet it is "not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims of disability." *Hobson*, 574 F.3d at 88.

"Trigger-point" evaluations are relevant factors that can be considered by plan administrators in diagnosing fibromyalgia. It is commonly accepted for doctors testing for fibromyalgia to examine 18 trigger points on the body for tenderness. *See Hobson*, 574 F.3d at 84 ("'documented trigger point tenderness'...is normally part of a fibromyalgia diagnosis."); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003) ("the only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character [is] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed . . . .)").

The Second Circuit has held that trigger-point results are objective evidence for ERISA plan administrators to consider supporting a claim that fibromyalgia is debilitating. *Hobson*, 574 F.3d at 88 ("[E]ven in a claim involving fibromyalgia, 'trigger point findings . . . constitute [such] objective evidence of the disease,' and it is not unreasonable for a plan administrator to require such evidence so long as the claimant was so notified"); *see also Hawkins*, 326 F.3d at 918 (holding that plan administrator's benefits denial was arbitrary and capricious when administrator relied solely on report of physician-reviewer who discounted the plaintiff's complaints of debilitating pain and trigger point findings and concluded that "'fibromyalgia

6

does not, in and of itself, produce permanent impairment")).

III.   Discussion

    A.   Abuse of Discretion

Defendant contends that Magistrate Judge Margolis incorrectly applied the abuse of discretion standard and "erred in finding that Prudential did not give proper weight to [P]laintiff's subjective complaints of pain." (Def.'s Obj. [Doc. # 49] at 9).  Defendant argues that it did consider subjective complaints of pain and fatigue but credited "objective medical evidence over" them.  Yet, as Magistrate Judge Margolis correctly explained, Prudential's analysis precludes a conclusion that debilitating pain or fatigue without evidence of functional deficits could ever be the source of functional limitation.  Supporting her recommended disposition, Magistrate Judge Margolis explained that

> While [D]efendant contends that "there is no evidence that Prudential refused to consider [P]laintiff's subjective complaints of pain," Dr. Howard's opinion, adopted in full by [D]efendant as the basis of its decision, rejected the foregoing in full, in favor of the absence of what Dr. Howard considered "functional impairments."  Furthermore, while defendant claims it "weigh[ed] the subjective evidence against the objective evidence, which failed to establish [P]laintiff's subjective symptoms or their affect on her ability to perform her occupation," such conclusion is not supported by the record, which, in addition to [P]laintiff's subjective complaints of pain and fatigue, includes objective references to [P]laintiff's fibromyalgia trigger points at 18/18, [P]laintiff's muscle spasms, and Dr. Varma's report of tenderness at all or nearly all joints on examinations.

(Rec. Rul. [Doc. # 45] at 25 (internal citations omitted).)

Magistrate Judge Margolis's conclusion that Prudential failed to consider factors that

the Second Circuit has said are relevant to diagnoses of fibromyalgia and its impact on a claimant's capacity to work accurately reflects the administrative record. Although Dr. Varma's letter concluding that Ms. Lanoue was unable to work because of her reported fatigue and pain, which "are the very things that would interfere with her ability to function in a work environment" (Ex. 130, GAL 334), was among the materials Dr. Howard reviewed in his final assessment of Ms. Lanoue's disability, he failed to address Dr. Varma's conclusions beyond mere acknowledgment of their existence (Ex. 131, GAL 338).

Rather, Dr. Howard, and in turn, Prudential focused on the lack of "functional deficits such as loss of range of motion" (Ex. 131, GAL 339), even though, as Dr. Varma noted, "[t]he mere fact that a person who suffers from both chronic pain and chronic fatigue has a relatively good range of motion does not mean that such a person could function on a full time basis at this job" (Exh. 130, GAL 334). Although Prudential has discretion in weighing the relevant factors, including subjective complaints of pain, in determining benefits eligibility, *see Plitnick v. Fussell*, 601 F. Supp. 2d 470, 485 (D. Conn. 2009); *Lee v. Aetna Life Ins. Co.*, No. 06cv2960, 2007 WL 1541009, at *5 (S.D.N.Y.May 24, 2007) ("On arbitrary and capricious review, the consideration of such complaint, including credibility determinations, is within the discretion of the administrator"), its insistence on objective evidence of functional deficits unrelated to debilitating pain meant that Prudential could never determine, on the basis of fibromyalgia alone, that Ms. Lanoue was disabled. Unlike Metropolitan Life Insurance's determination that Deborah Hobson's "pain did not rise to the level of rendering her unable to work" in light of the absence of trigger-point testing and equivocation by the treating physician, which was affirmed by the Second Circuit, *Hobson*, 574 F.3d at 88, Dr. Howard's conclusion demonstrates

8

an unwillingness to acknowledge that pain could ever be so severe as to rise to that level. As Magistrate Judge Margolis correctly determined, no evidence of intense fibromyalgia-induced pain rendering a claimant incapable of working as a casino floorperson would have satisfied Prudential based on the factors they considered. (Rec. Rul. at 25 n.23). Because Prudential would not have been satisfied that fibromyalgia constituted a disabling impairment, absent showing of an unrelated condition, its review was arbitrary and capricious.

B.    Reports of Tenderness

Prudential's objection to Magistrate Judge Margolis' finding that Dr. Varma's reports of Plaintiff's tenderness is an "objective reference" (Def.'s Obj. at 12) overlooks the fact that while reports of tenderness may indeed be subjective, they are buttressed in this case by Dr. Varma's 18/18 trigger-point testing of Ms. Lanoue. The Second Circuit has held that such findings constitute objective evidence. *Hobson*, 574 F.3d at 88.

C.    Dr. Howard's Report

Prudential objects to the Recommended Ruling's conclusion that Dr. Howard's analysis did not constitute "substantial evidence." (Def.'s Obj. at 13). Independent medical examinations, such as Dr. Howard's purports to be, are substantial evidence when they are based on analyses of relevant factors and evidence. *See Hobson*, 574 F.3d at 85–86. In *Hobson*, the independent medical reviewer, Dr. Nesta, weighed all relevant available evidence, and his conclusion relied on the absence of trigger point tenderness and the dearth of "hard evidence" which would have "substantiate[d] her disability from a rheumatological viewpoint." *Id.* Additionally, Dr. Nesta's conclusion drew support from the plaintiff's treating physician, who concluded that the plaintiff's "subjective pain did not rise to the level of rendering her unable

9

to work." *Id.* at 88.

Dr. Howard, by contrast, did not base his report on all relevant factors. Ms. Lanoue provided evidence of her disability that Dr. Howard could have analyzed and discussed in his report, including her objective 18/18 trigger-point results and Dr. Varma's conclusion that she was incapable of standing on her feet long enough to fulfill her job obligations. Yet in ostensibly examining these records, listed in the front of his report, Dr. Howard focused on what was not provided, namely the evidence of "functional deficits" medically unrelated to fibromyalgia, including "loss of range of motion . . ., motor weakness, loss of coordination, abnormalities of station and gait, motor atrophy, peripheral neuropathic abnormalities, or other forms or arthritis such as osteoarthritis or inflammatory arthritis" (Ex. 117, GAL 310). Dr. Howard's analysis thus conveys that pain of fibromyalgia is never sufficient to result in a qualifying disability, a conclusion that stands at odds with Second Circuit jurisprudence. *See Green-Younger*, 335 F.3d at 108. By disregarding Ms. Lanoue's subjective complaints of pain; Dr. Varma's trigger-point test results; and Dr. Varma's conclusion as her treating physician that Plaintiff's debilitating chronic pain and fatigue rendered her unable to work as a casino floorperson, Dr. Howard failed to weigh all relevant factors in ascertaining both Ms. Lanoue's ailment and inability to work, and his independent medical evaluation thus cannot constitute substantial evidence.

        D.      Medical Consultant's Review and Regular Occupation Review

Prudential also objects to the Recommended Ruling's conclusion that neither the Medical Consultant's Clinical Capacity Review ("Medical Consultant's Review") nor the Regular Occupation Review constituted substantial evidence. (Def.'s Objections at 16.)

Neither of these reports was referenced in Prudential's benefits denial.  While reasons given at the time of a benefit denial are reviewed to assess whether an administrator acted in an arbitrary and capricious manner, *see, e.g.*, *Karanda*, 158 F. Supp. 2d at 198, Magistrate Judge Margolis correctly observes that "[t]he reasons [D]efendant gave at the time of the denial [of the appeals] were the reasons articulated by Dr. Howard, from whose opinion [D]efendant quoted for all of its decision, with the exception of a conclusory paragraph summing up Dr. Howard's determination." (Rec. Rul. at 18 citing (Ex. 27, GAL 161–62).) The benefits denial letter reiterates Ms. Lanoue's claims, summarizes information she provided, and states Dr. Howard's findings.  It does not include reference to either the Medical Consultant's Review or the Regular Occupation review.  Any rationale now relied upon by Prudential, including these reviews, that was not articulated in Prudential's denial letter will not be considered for purposes of determining whether this decision was arbitrary and capricious.

E.      Adoption of Evidence

Finally, Prudential objects to Magistrate Judge Margolis' "adoption of plaintiff's evidence as entirely true and rejection of its evidence." (Def.'s Obj. at 18.)  Regardless of Magistrate Judge Margolis's characterization of Prudential's evidence of Ms. Lanoue's condition, it is ultimately irrelevant.  On de novo review of the motion for summary judgment, this Court assesses whether Prudential's denial decision shows that it weighed all relevant factors and relied upon substantial evidence.  Prudential's sole reliance upon Dr. Howard's report, which articulated a test for disability under which debilitating fibromyalgia-induced pain alone could never qualify, constituted an arbitrary and capricious eligibility determination.  Dr. Howard's logic, adopted by Prudential, held that any claim of

11

fibromyalgia, no matter how severe the pain or how conclusive the trigger-point evaluation, would not be disabling unless there was also a showing of other medically unrelated conditions. This review failed to consider the possibility that severe pain and fatigue alone can render an individual incapable of mustering the physical strength and mental focus to fulfill her job duties. Prudential abused the discretion granted to it by failing to conduct such an analysis.

        F.        Futility of Remand

The Court concludes that this is not a case where remand to the plan administrator is appropriate. The administrative record is not incomplete, *see Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 648 (2d Cir. 2002) (remand is "inappropriate 'where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.'") (quoting *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 n.4 (2d Cir. 1996) (holding that remand to plan administrator was inappropriate where plan administrator improperly failed to consider medical reports and letters in the administrative record that supported insured's claim for medical expenses related to recovery from intensive surgery)), and neither party argues that there is additional evidence for the administrator to consider. Thus, remand here would be a "useless formality." *See Miller*, 72 F.3d at 1072 ("[I]f upon review a district court concludes that [a plan administrator's] decision was arbitrary and capricious, it must remand to [the plan administrator] with instructions to consider additional evidence *unless* no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality'") (citation omitted, emphasis added).

IV.     Conclusion

The Court OVERRULES Defendant's Objections to the Recommended Ruling [Doc. # 49] and ADOPTS the Recommended Ruling [Doc # 45]. Accordingly, Defendant's Motion for Summary Judgment [Doc. # 30] is DENIED, and Plaintiff's Motion for Summary Judgment [Doc. # 29] is GRANTED. Judgment shall enter in favor of Plaintiff Gail A. Lanoue, entitling her "to recover benefits due to [her] under the terms of" the Plan, 29 U.S.C. §1132(a)(1)(B), which in this case is long term disability benefit coverage in accordance with the Defendant's disability insurance policy. In addition, Plaintiff may submit an application for "a reasonable attorney's fee and costs of action," 29 U.S.C. § 1132(g)(1), no later than 14 days after entry of Judgment, consistent with Federal Rule of Civil Procedure 54(d)(2).

The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of September, 2009.